**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

ERIC S. POYNTER,

        Debtor - Appellant,

  v.

UNITED STATES OF AMERICA,
Department of Education,

        Appellee.

No. 10-56751

D.C. No. 3:10-cv-01041-H-CAB

MEMORANDUM[*]

Appeal from the United States District Court
for the Southern District of California
Marilyn L. Huff, District Judge, Presiding

Argued and Submitted March 5, 2012
Pasadena, California

Before: FARRIS, CLIFTON, and IKUTA, Circuit Judges.

     Eric Poynter filed a Chapter 7 bankruptcy petition on October 28, 1993. In

March 1994, he received a discharge. In September 2008, Poynter reopened his

bankruptcy proceedings. He sought a declaration that his discharge covered two

---

     [*]    This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

1985 educational loans held by the Department of Education. The bankruptcy court ruled the loans were not dischargeable, and the district court affirmed. We have jurisdiction under 28 U.S.C. § 158(d)(1). We affirm.

We review *de novo* an appeal from the district court's decision on appeal from the bankruptcy court. *In re JTS Corp.*, 617 F.3d 1102, 1109 (9th Cir. 2010). We review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *Id.*

When Poynter filed for bankruptcy, his student loans were dischargeable if they "first became due more than 7 years . . . before the filing of the [bankruptcy] petition." 11 U.S.C. § 523(a)(8)(A) (1990). Thus, in order for Poynter's loans to be dischargeable, they must have become due no later than October 27, 1986. Poynter argues that two provisions of the promissory notes independently caused the loans to become due by this date.

First, Poynter invokes a term that gave him a six-month grace period before repayment. The grace period would begin when he "le[ft] school or cease[d] to carry at least one-half the normal academic workload." Poynter argues his grace period ended in September 1986 because he "cease[d] to carry at least one-half the normal academic workload" when he stopped attending most of his classes in March 1986. We reject the argument. The date the grace period began turned on

2

enrollment, not attendance. Poynter was enrolled in more than one-half of a normal academic load as late as September 1986. His grace period ended less than seven years before his bankruptcy petition.

Our reading follows the "ordinary and popular sense" of "carry." Cal. Civ. Code § 1644. In the educational context, "carry" typically refers to responsibility for courses, which in turn depends on formal enrollment. *See The American Heritage Dictionary* 294 (3d ed. 1992). Our reading also "give[s] effect to every part" of the promissory notes. Cal. Civ. Code § 1641. Equating "carry" with "attendance" would make the phrase "leav[ing] school" redundant.

Second, Poynter invokes a term that provided the loans would become "immediately due and payable" upon default. Poynter argues the loans became due under this term at the end of the Spring 1986 semester because he "fail[ed] . . . to notify [the] lender . . . of a change in . . . enrollment status."

We reject the argument. The failure to notify the lender of a change in enrollment status was not the pivotal factor. We recognize that the failure to notify the lender "could" constitute default. That does not equate to "must" constitute default. Rather, the promissory notes contemplate that default is declared by the lender. Even in the case of default, the lender had discretion over when to demand repayment. *See In re Scott*, 147 F.3d 788, 790 (8th Cir. 1998). Nothing in the

3

record even suggests that the lender demanded repayment more than seven years before Poynter filed for bankruptcy.

AFFIRMED.